13 F.3d 388
 David DUKE, Patrick J. Mahoney, Larry Agran, Lyndon
LaRouche, Jr., Guillermo Sanchez, Tasharay S.
Otway-Smithers, David Baldwin, Edward J. Rosenfeld, Eugene
Cottrell, Claire Urdl, William E. Bonnell, and Susan B.
Thomas, Plaintiffs-Appellants,
v.
Jim SMITH, Secretary of the State of Florida, T.K.
Wetherell, Speaker of the Florida House of Representatives,
Gwen Margolis, President of the Florida Senate, James M.
Lombard, Minority Leader of the Florida House of
Representatives, Ander Crenshaw, Minority Leader of the
Florida Senate, Simon Ferro, Chairman of the Florida
Democratic Party, and Van Poole, Chairman of the Florida
Republican Party, in their capacities as members of the
Presidential Candidate Selection Committee, Defendants-Appellees.
 No. 92-4093.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 3, 1994.
 
 Bruce Rogow, Beverly A. Pohl, H. Collins Forman, Jr., Fort Lauderdale, FL, Nina Vinik, American Civil Liberties Union of Florida Foundation, Inc. Miami, FL, for plaintiffs-appellants.
 Mark Levine, Tallahassee, FL, for Simon Ferro, State Chairman of the FL Demo Party.
 E. Thom Rumberger, Sharon L. Stedman, Daniel J. Gerber, Orlando, FL, for Van Poole, Lombard, Crenshaw.
 George L. Waas, Dept. of Legal Affairs, Tallahassee, FL, for Smith, Wetherell and Magolis.
 Appeal from the United States District Court for the Southern District of Florida.
 Before CARNES, Circuit Judge, and FAY* and JOHNSON, Senior Circuit Judges.
 FAY, Senior Circuit Judge:
 
 
 1
 David Duke filed an action pursuant to 42 U.S.C. Sec. 1983 in the District Court for the Southern District of Florida[1] challenging Florida Statutes Sec. 103.101 which governs access to the presidential primary ballot in Florida. The district court consolidated the preliminary injunction hearing with the trial and denied relief to all of the plaintiffs. Because we find state action, we REVERSE.
 
 I. FACTS
 
 2
 Florida Statutes Sec. 103.101 entitled "Presidential preference primary" is the exclusive vehicle through which a person may gain access to the Florida presidential preference primary ballot ("Ballot").[2] The Plaintiffs sought to have their names placed on the 1992 Ballot in Florida. To that end, they followed the procedures contained in Florida Statutes Sec. 103.101 and submitted their names to the Presidential Candidate Selection Committee ("Committee"). The defendants in this case, Jim Smith, T.K. Wetherell, Gwen Margolis, James M. Lombard, Ander Crenshaw, Simon Ferro, and Van Poole, comprise the Committee described in the statute.
 
 
 3
 Pursuant to Sec. 103.101(2)(a), following the plaintiffs' submissions, the representatives of the Florida Democratic and Republican Parties gave a list of their respective candidates for the Ballot to the Secretary of State, Jim Smith.[3] None of the Plaintiffs were on either list submitted to the Secretary of State.
 
 
 4
 Accordingly, thirty-two candidates, including plaintiffs Duke, Agran, Mahoney, and LaRouche, petitioned the Secretary of State pursuant to Sec. 103.101(2)(b) to have their names reconsidered for inclusion on the Ballot.[4] Subsequently, the Secretary of State requested that the Committee reconvene to reconsider the Plaintiffs' requests. On January 16, 1992, pursuant to Sec. 103.101(2)(c), the Committee reconvened and the Secretary of State read the names of 32 candidates who submitted formal requests for reconsideration. After he read the names, there was no response from the Committee and the Secretary of State stated:
 
 
 5
 Would anyone like to make a motion? Hearing none--is there any other business to come before this committee? This is one of the most efficient committees in government today, I think. There is no discussion--we are done. Meeting adjourned.
 
 
 6
 Van Poole Exh. 2; RE-8 (emphasis added).
 
 
 7
 Following the Committee's rejection of the Plaintiffs' petitions for reconsideration, the Plaintiffs filed suit[5] and alleged that the reconsideration process was unconstitutionally vague and allowed arbitrary and capricious government action which violated their First and Fourteenth Amendment rights. Pursuant to Fed.R.Civ.P. 65(2), the district court held a consolidated trial preliminary injunction evidentiary hearing on January 28, 1992. The district court found that the Plaintiffs failed to prove state action and entered judgment in favor of the Defendants on that basis.
 
 
 8
 The Plaintiffs appeal the above order and raise the following issues:[6]
 
 
 9
 I. Whether this challenge to a presidential primary ballot access statute is capable of repetition yet evading review, and thus justiciable under the United States Constitution Art. III Sec. 2?[7]
 
 
 10
 II. Whether the actions of the Presidential Candidate Selection Committee under Florida Statute Sec. 103.101(2)(c) are under color of state law for purposes of liability under Title 42 U.S.C. Sec. 1983?
 
 
 11
 III. Whether Sec. 103.101(2)(c) governing the reconsideration of excluded candidates by the Presidential Candidate Selection Committee violates the Fourteenth Amendment to the United States Constitution because it lacks any standards and allows arbitrary and capricious governmental action?
 
 
 12
 IV. Whether the Presidential Candidate Selection Committee violated Plaintiff David Duke's First and Fourteenth Amendment rights by excluding that candidate from the Presidential Primary Ballot because of his political beliefs?
 
 
 13
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Because we find that the Committee acted under the color of state law during the reconsideration process, we reverse.
 
 II. DISCUSSION
 
 14
 We review the district court's order de novo because the issue of state action is a mixed question of law and fact. Albright v. Longview Police Dept., 884 F.2d 835, 838 (5th Cir.1989).
 
 1. State Action
 
 15
 In order to prevail on a Sec. 1983 claim, the Plaintiffs must show that: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Burch v. Apalachee Community Mental Health Services, Inc., 840 F.2d 797, 800 (11th Cir.1988), aff'd by Zinermon v. Burch, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).
 
 
 16
 Our inquiry into the state action question will focus narrowly on the reconsideration provisions of Sec. 103.101(2)(c) as it is the only subsection of the statute which the Plaintiffs address on appeal.[8] Subsection (2)(c) states:
 
 
 17
 (c) If a presidential candidate makes a request that the selection committee reconsider placing the candidate's name on the ballot, the selection committee will reconvene no later than the second Thursday after the first Monday in January to reconsider placing the candidate's name on the ballot. The Department of State shall immediately notify such candidate of the selection committee's decision.
 
 
 18
 Fla.Stat. Sec. 103.101(2)(c) (1991) (emphasis added).
 
 
 19
 In Duke v. Cleland, 5 F.3d 1399 (11th Cir.1993) ("Duke II "), this Court examined a similar presidential primary ballot access statute in Georgia. The Georgia statute grants the Secretary of State the power to create the initial list of candidates which is then submitted to the committee members[9] of the same political party as the candidate. The candidate's name appears on the presidential primary ballot unless all committee members of the same political party as the candidate agree to delete the candidate's name from the ballot. In a similar analysis of the state action issue, we held that:
 
 
 20
 Party membership is no concern of the state. Smith v. Allwright, 321 U.S. 649, 664 [64 S.Ct. 757, 765, 88 L.Ed. 987] (1944); see also Democratic Party v. Wisconsin ex rel. Lafollette, 450 U.S. 107 [101 S.Ct. 1010, 67 L.Ed.2d 82] (1981). An entity may, however, become "so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." Evans v. Newton, 382 U.S. 296, 299 [86 S.Ct. 486, 488, 15 L.Ed.2d 373] (1966). When as here the state empowers its officials to exclude presidential aspirants from the presidential primary ballot, the power exercised is directly attributable to the state. Allwright, 321 U.S. at 664-65 [64 S.Ct. at 765]. Indeed the Committee performs a critical public function by limiting the electorate's voting choices to its candidates only. See id.
 
 
 21
 That the Committee exercises judgment independent of the state does not necessarily negate state action. See Terry v. Adams, 345 U.S. 461, 469 [73 S.Ct. 809, 813, 97 L.Ed. 1152] (1953). The Committee acts in "matters of high public interest, matters intimately connected with the capacity of government to exercise its functions unbrokenly and smoothly." Nixon v. Condon, 286 U.S. 73, 88 [52 S.Ct. 484, 487, 76 L.Ed. 984] (1932). Its power to restrict ballot access flows directly from the state ab initio. See Allwright, 321 U.S. at 664 [64 S.Ct. at 765].
 
 
 22
 . . . . .
 
 
 23
 Indeed, the Committee's determinations are essentially unreviewable by the party membership. The Committee's power is such that it alone may declare who is fit to run, and who, by extension, is fit to govern. As the product of state legislative choice, the Committee's power constitutes "state action" within the meaning of the Fourteenth Amendment. Bullock v. Carter, 405 U.S. 134, 140 [92 S.Ct. 849, 854, 31 L.Ed.2d 92] (1972).
 
 
 24
 Duke II at 1403-04 (emphasis added) (footnote omitted).
 
 
 25
 Although the operation of the Georgia statute differs from that of the Florida statute, any distinction is purely academic.[10] The net result of both statutes is that the bipartisan state-created Committees are inextricably intertwined with the process of placing candidates names on the ballot, and the state-created procedures, not the autonomous political parties, make the final determination as to who will appear on the ballot in each primary election.[11]
 
 
 26
 Section 103.101(2)(c) does not leave the individual political parties the discretion to review a candidate's reconsideration. Rather, because the Florida legislature has given the Committee power to "declare [during the reconsideration process] who is fit to run, and who, by extension is fit to govern," Duke II at 1404, we are bound by the new precedent in this Circuit and hold that the procedures outlined in Sec. 103.101(2)(c) constitute state action. Id.; See also Gray v. Sanders, 372 U.S. 368, 374, 83 S.Ct. 801, 805, 9 L.Ed.2d 821 (1963) (holding that state regulation of the preliminary phase of the election process may constitute state action).
 
 2. Deprivation
 
 27
 Having satisfied the first prong of the Sec. 1983 analysis by finding state action, we now turn to the second prong to determine whether the Plaintiffs suffered a deprivation of any constitutional right, privilege or immunity through the Committee's application of the reconsideration procedure outlined by Sec. 103.101(2)(c).[12]
 
 
 28
 The Supreme Court has adopted a "flexible approach to determine the proper standard of judicial review to be applied in ballot access cases...." Duke II at 1404, citing Anderson v. Celebrezze 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).[13] To determine the applicable level of scrutiny to apply in our analysis of the reconsideration procedure, we follow the Court's recent interpretation of Anderson which held that:
 
 
 29
 A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the state as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'
 
 
 30
 Burdick v. Takushi, --- U.S. ----, ----, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992), citing Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).
 
 
 31
 Generally, the state may impose reasonable requirements for access to a presidential primary ballot. Burdick, --- U.S. at ----, 112 S.Ct. at 2063. Every provision in election laws, "whether [they] [govern] the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects--at least to some degree--the individual's right to vote and his [or her] right to associate with others for political ends." Anderson v. Celebrezze, 460 U.S. 780, 788, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983).
 
 
 32
 As we noted in Duke II, "when the state election scheme burdens a fundamental constitutional right severely, it may survive only if it is narrowly tailored to advance a compelling state interest." Duke II at 1405, citing Burdick, --- U.S. at ----, 112 S.Ct. at 2063. On the contrary, when the challenged provision imposes only "reasonable, nondiscriminatory restrictions" upon voters' First and Fourteenth Amendment rights, "the State's important regulatory interests are generally sufficient to justify the restrictions." Id. (Citations omitted).
 
 
 33
 The First and Fourteenth Amendment rights which the Plaintiffs seek to vindicate are: (1) the voters' rights to vote for the candidates of their choice; (2) Duke's right not to be eliminated from the reconsideration process because of his political beliefs and expressions (free speech); and (3) the candidates' rights to have their reconsideration petitions judged by articulated standards (procedural due process). These rights must be weighed against the interests put forward by the state as justifications for the burden imposed by the reconsideration procedure.
 
 
 34
 Here, the state offered only enough justification for the statute for the district court to determine that "[t]he evidence before this Court suggests that, at best, the meeting of the Presidential Candidate Selection Committee provides a definite meeting time for decision for political parties to transmit the names of their presidential preference primary candidates to the Secretary of State." Duke v. Smith, 784 F.Supp. 865, 871 (S.D.Fla.1992). Of course, this could be accomplished by a short simple statutory requirement setting such a deadline.
 
 
 35
 In balancing the Plaintiffs' various constitutional rights against a convenient vehicle through which the Secretary of State may compile and finalize a list of primary candidates, the scales tip in favor of the Plaintiffs in this case. Because we find that the Plaintiffs' constitutional rights are subjected to severe restrictions, namely the Committee's unfettered discretion to exclude candidates who have petitioned for reconsideration, we will analyze Sec. 103.101(2)(c) under a strict scrutiny test to determine if it is "narrowly tailored to advance a compelling state interest." Burdick, --- U.S. at ----, 112 S.Ct. at 2063. See also Norman v. Reed, --- U.S. ----, ----, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992).[14]
 
 
 36
 Only a portion of one sentence contained in Sec. 103.101(2)(c) addresses the means through which candidates are reconsidered for placement on the ballot. It states that "the selection committee will reconvene ... to reconsider placing the candidate's name on the ballot." This language is far from narrow construction and clearly lacks any articulable standards through which the Committee "reconsiders" candidates for placement on the Ballot. Given the breadth of the language and absence of a compelling state interest, we cannot allow the continued operation of the reconsideration process "[w]here, as here, there are no standards governing the exercise of the discretion granted by the [reconsideration provision because] the scheme permits and encourages an arbitrary and discriminatory enforcement of the law." Papachristou v. City of Jacksonville, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L.Ed.2d 110 (1972). Because Sec. 103.101(2)(c) "cannot be squared with our constitutional standards ...," Id. at 171, 92 S.Ct. at 848, we hold that it is unconstitutional.[15]
 
 III. CONCLUSION
 
 37
 Because we find that the reconsideration provisions contained in Florida Statutes Sec. 103.101(2)(c) constitute state action which deprived the Plaintiffs' of their First and Fourteenth Amendment rights, we REVERSE the district court's order.
 
 
 38
 The Judgment is REVERSED and the matter is REMANDED for further proceedings.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 Several other plaintiffs joined Duke in this action: Patrick J. Mahoney, Larry Agran, Lyndon H. LaRouche, Jr., Guillermo Sanchez, Tasharay S. Otway-Smithers, David Baldwin, Edward J. Rosenfeld, Eugene Cottrell, William E. Bonnell, and Susan B. Thomas. The Plaintiff-Appellants will be collectively referred to as "Plaintiffs" unless indicated otherwise
 
 
 [2]
 The statute provides, in relevant part:
 (2) There shall be a Presidential Candidate Selection Committee composed of the Secretary of State, who shall be a nonvoting chairman; the speaker of the House of Representatives; the President of the Senate; the minority leader of each house of the Legislature; and the chairman of each political party required to have a presidential preference primary under this section.
 (a) By December 31 of the year preceding the Florida presidential preference primary, each political party shall submit to the Secretary of State a list of its presidential candidates to be placed on the presidential preference primary ballot or candidates entitled to have delegates appear on the presidential preference primary ballot. The Secretary of State shall prepare and publish a list of the names of the presidential candidates submitted. The Secretary of State shall submit such list of names of presidential candidates to the selection committee on the first Tuesday after the first Monday in January each year a presidential preference primary election is held. Each person designated as a presidential candidate shall have his name appear, or have his delegates' names appear, on the presidential preference primary ballot unless all committee members of the same political party as the candidate agree to delete such candidate's name from the ballot. The selection committee shall meet in Tallahassee on the first Tuesday after the first Monday in each year a presidential preference primary is held. The selection committee shall publicly announce and submit to the Department of State no later than 5 p.m. on the following day the names of the presidential candidates who shall have their names appear, or who are entitled to have their delegates' names appear, on the presidential preference primary ballot. The department of State shall immediately notify each presidential candidate designated by the committee. Such notification shall be in writing, by registered mail, with return receipt requested.
 (b) Any presidential candidate whose name does not appear on the list submitted to the Secretary of State may request that the selection committee place his name on the ballot. Such request shall be made in writing to the Secretary of State no later that the second Tuesday after the first Monday in January.
 (c) If a presidential candidate makes a request that the selection committee reconsider placing the candidate's name on the ballot, the selection committee will reconvene no later than the second Thursday after the first Monday in January to reconsider placing the candidate's name on the ballot. The Department of State shall immediately notify such candidate of the selection committee's decision.
 Fla.Stat. Sec. 103.101(2) (1991) (emphasis added).
 
 
 [3]
 We will not consider the procedures that the respective political parties employed in determining which candidates to submit under subsection (2)(a) because at that stage of the process, the autonomous political parties' First Amendment rights takes their motivation for exclusion (or inclusion) outside the ambit of state control. See, e.g., Democratic Party v. Wisconsin, 450 U.S. 107, 123-24, 101 S.Ct. 1010, 1019-20, 67 L.Ed.2d 82 (1981); Kusper v. Pontikes, 414 U.S. 51, 56-57, 94 S.Ct. 303, 307-08, 38 L.Ed.2d 260 (1973)
 
 
 [4]
 The parties stipulated at trial that the Plaintiffs complied with the requirements outlined in Sec. 103.101
 
 
 [5]
 The Plaintiffs sought injunctive and declaratory relief pursuant to 42 U.S.C. Sec. 1983 and 28 U.S.C. Sec. 2201 and 2202 respectively
 
 
 [6]
 Stephen A. Koczak filed an emergency motion to intervene which the district court dismissed as untimely. We consolidated his separate appeal of that dismissal with the instant case. We review that order under an abuse of discretion standard. Stallworth v. Monsanto Co., 558 F.2d 257, 263 (5th Cir.1977), citing NAACP v. New York, 413 U.S. 345, 367, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). Because we find no such abuse, we affirm the dismissal
 
 
 [7]
 We agree with both parties that this case falls within the "capable of repetition yet evading review" exception to the mootness doctrine and we will not further address this issue. Duke v. Cleland, 954 F.2d 1526, 1528 (11th Cir.1992)
 
 
 [8]
 We find no merit in the defendants' argument that this subsection was not properly preserved for appeal. The entire statute was the basis of the lawsuit. Furthermore, the record reflects discussion of subsection (2)(c) and Plaintiffs' counsel pointed out that "[t]his lawsuit deals with [Sec. 103.101 subsection] 2, mostly B and C." (R2-143). Accordingly, we find that the district court had ample opportunity to examine the portion of the statute that is now on appeal
 
 
 [9]
 The Georgia committee is comprised of precisely the same members as is the Florida committee
 
 
 [10]
 Namely, the distinction is that in Georgia, the statute mandates that the Secretary of State independently determine what names will be submitted to the political parties for consideration. In Florida, the statute calls for a bipartisan committee to serve as the final gate through which all candidates must flow before securing a place on the ballot. In either instance, a state-mandated procedure grants a person or group the unfettered discretion to make the ultimate determination of who will or will not appear on the primary ballot
 
 
 [11]
 Much of the district court's analysis turned on the role of the Secretary of State acting alone in a non-voting ministerial capacity. Although we do not necessarily disagree with the district court's determinations in that respect, we think that the inquiry must go further to encompass the entire statute; namely the reconsideration provisions
 
 
 [12]
 It should be noted that Defendants Poole, Crenshaw and Lombard conceded that if this Court found state action, then Sec. 103.101 is unconstitutional. (R1-31-4, 5). However, for the purpose of clarity, we will analyze the operation of the subsection in question
 
 
 [13]
 The Anderson Court adopted a balancing test that allows the analysis to shift from strict scrutiny to a rational-basis test depending on the facts of each case. Fulani v. Krivanek, 973 F.2d 1539, 1543 (11th Cir.1992)
 
 
 [14]
 Although we have determined that a strict scrutiny analysis of the reconsideration process is the proper standard to apply in this case, we think that subsection (2)(c) would not pass constitutional muster under the lowest level of scrutiny
 
 
 [15]
 It is well settled that speech regarding political beliefs and the right of association comprise the "core" of activity protected by the First Amendment. Rutan v. Republican Party of Illinois, 497 U.S. 62, 69, 110 S.Ct. 2729, 2734, 111 L.Ed.2d 52 (1990). Furthermore, it is abundantly clear from the record that the Committee did not reconsider Duke for placement on the Ballot because of his extensive involvement with and intimate ties to several notable white supremacist hate groups such as the Ku Klux Klan, the Nazis, and the National Association for the Advancement of White People. Therefore, we need not address the final issue on appeal because it is clear that Duke was passed over due to his speech and association with such groups