United States Court of Appeals,

Eleventh Circuit.

No. 95-8452.

David DUKE, Martha Andrews, William Gorton, and Victor Manget, Plaintiffs-Appellants,

v.

Max CLELAND, Secretary of the State of Georgia and Chair of the Presidential Candidate Selection Committee, et al., Defendants-Appellees,

Alec L. Poitevint, as a Member of the Presidential Candidate Selection Committee, Defendant-Intervenor-Appellee.

July 11, 1996.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-CV-116-RCF), Richard C. Freeman, Senior District Judge.

Before HATCHETT, Circuit Judge, HENDERSON, Senior Circuit Judge, and MILLS[*], District Judge.

HATCHETT, Circuit Judge:

In this case, we affirm the district court's decision granting summary judgment to Georgia state officials and Republican Party officials who refused to place David Duke's name on the presidential preference primary ballot for the 1992 election.

FACTS

David Duke, a controversial political figure, sought the Republican Party's nomination for President of the United States for the 1992 election. In pursuing the Republican Party nomination, Duke participated in presidential primaries in various

---

[*]Honorable Richard H. Mills, U.S. District Judge for the Central District of Illinois, sitting by designation.

states throughout the nation.[1] In December 1991, Georgia's Secretary of State, Max Cleland, prepared and published a list of potential candidates for Georgia's presidential preference primary.[2] Duke's name appeared on the Georgia list of presidential candidates for the Republican Party nomination. The Secretary submitted his initial list of presidential primary candidates to the presidential candidate selection committee (Committee) for the Republican Party, the committee that is responsible for representing the Republican Party in selecting the republican candidates to appear on the presidential preference primary ballot, according to section 21-2-193(a) of the Georgia Code.

On December 16, 1991, the Committee, consisting of Georgia's Republican Party Chairperson Alec Poitevint, Senate Minority Leader Tom Phillips, and House Minority Leader Paul Heard, met to discuss the Secretary's list of potential presidential candidates. Pursuant to their authority under O.C.G.A. § 21-2-193(a), the Committee deleted Duke's name from the list of potential republican presidential candidates.[3] Following the Committee's decision, the

---

[1]The record shows that Duke's name appeared on the ballot in republican presidential primaries in 1992 in the following states: Connecticut, Kansas, Louisiana, Massachusetts, Michigan, Mississippi, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, and Washington.

[2]The Secretary of State prepares a list of potential presidential candidates comprised of persons "who are generally advocated or recognized in news media throughout the United States as aspirants for that office and who are members of a political party or body which will conduct a Presidential Preference Primary" in the state. O.C.G.A. § 21-2-193(a).

[3]Under Georgia law, "each person designated by the Secretary of State as a presidential candidate shall appear upon the ballot of the appropriate political party or body unless all committee members of the same political party or body as the candidate

Secretary of State published a list of presidential candidates that did not include Duke's name. Prior to the January 6, 1992 statutory deadline, Duke petitioned pursuant to section 21-2-193(b) of the Georgia Code to have the Secretary of State place his name on the ballot. On January 8, 1992, the Committee held a meeting to reconsider its earlier decision to exclude Duke from the presidential primary preference ballot. Under the reconsideration procedures, a single member of the Committee could have voted to have Duke's name placed on the presidential preference primary ballot and Duke's name would have been placed on the ballot. O.C.G.A. § 21-2-193(b). No committee member voted to have Duke's name placed on the ballot.

## PROCEDURAL HISTORY

On January 15, 1992, Duke and voters who desired an opportunity to vote for him filed this lawsuit in the District Court for the Northern District of Georgia against the Committee and Cleland, as the Secretary of State and as chair of the Committee, seeking a temporary restraining order, a preliminary injunction, and a permanent injunction, under 42 U.S.C. § 1983, to prevent the printing of primary ballots for the 1992 Georgia republican presidential preference primary without Duke's name being listed as a candidate. In their complaint, the appellants alleged that the Committee's decision to exclude Duke's name from the primary ballot deprived them of their right to free speech, right to association, right to due process, right of equal

---

agree to delete such candidate's name from the ballot." O.C.G.A. § 21-2-193(a).

protection, right to run for office and the right to vote, in violation of the First and Fourteenth Amendments to the United States Constitution. After Poitevint, chairperson of the Georgia Republican Party, moved to intervene, the district court granted Poitevint's motion to intervene and issued an order denying the appellants' request for a temporary restraining order and preliminary injunction. *Duke v. Cleland,* 783 F.Supp. 600 (N.D.Ga.1992). This court affirmed the decision in *Duke v. Cleland,* 954 F.2d 1526 (11th Cir.), *cert. denied,* 502 U.S. 1086, 112 S.Ct. 1152, 117 L.Ed.2d 279 (1992) (hereinafter *Duke I* ).

After the plaintiffs were denied injunctive relief, they filed an amended complaint adding an additional claim under 42 U.S.C. § 1983, claiming that Georgia's statute regulating presidential preference primary candidate selection violated their rights of free speech, right of association, right to equal protection, right to run for office, right to vote, and right of due process guaranteed under the First and Fourteenth Amendments to the Constitution of the United States. Acting upon the appellees' motion to dismiss for failure to state a claim, the district court granted the appellees' motion to dismiss finding that the state statute was constitutional, the appellants did not suffer any constitutional violations, and that no state action occurred. This court vacated the district court's decision and remanded in *Duke v. Cleland,* 5 F.3d 1399 (11th Cir.1993) (hereinafter *Duke II* ), finding that the Committee was an arm of the state, and therefore, its actions constituted state action. This court remanded the case to the district court to determine the state interest purportedly

advanced through O.C.G.A. § 21-2-193 and to weigh those interests against the purported burdens on the appellants' constitutional rights.

On remand to the district court, the appellees again moved for summary judgment. The district court granted the appellees' motion for summary judgment finding that the state had a compelling interest in protecting political parties' right to define their identity and finding that the statute was narrowly tailored to advance the state's compelling interest.

CONTENTIONS

Duke and the voters contend the district court failed to adhere to the holdings in *Duke II* and *Duke v. Smith,* 13 F.3d 388 (11th Cir.), *cert. denied, Koczak v. Smith,* --- U.S. ----, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994) (Florida *Duke* ), causing it to erroneously conclude that Duke's exclusion from the ballot was not attributable to state action. They assert that *Duke II* held that the exclusion of Duke from the primary ballot was state action and that the plaintiffs in that case asserted that the state action infringed their constitutionally protected rights. Second, Duke and the voters contend that the power of the state to exclude and the Committee's exclusion of Duke from the ballot failed any level of constitutional scrutiny. They contend that the district court erroneously found that the statute advanced a compelling interest in a narrowly tailored manner. They also argue that the statute actually undermines a political party's right to define its membership, and that the power of the Committee to exclude a candidate from the primary ballot is neither necessary nor narrowly

tailored because it violates their rights of free speech and association under the First and Fourteenth Amendments. Finally, they contend that the statute allows the committee unfettered discretion to exclude anyone from being listed on the presidential primary ballot, thus frustrating the stated purpose of the statute: that is, to allow the voters of Georgia to "express their preference for one person to be the candidate for nomination by his party or body for the office of President...." O.C.G.A. § 21-2-191.

The Committee contends that the district court correctly found that section 21-2-193(a) of Georgia Code is constitutional because the state has a compelling interest in protecting the First Amendment rights of political organizations to define their identity and to select their candidates. It contends that the statute is narrowly tailored to achieve that purpose. It contends that the statute requires a unanimous decision of all three of its members to exclude a candidate and allows any member to unilaterally replace an excluded candidate on the ballot. The Committee also argues that the record demonstrates that Duke was not even a member of the Republican Party.[4]

### ISSUES

The issues we address in this appeal are: (1) whether the district court erred in granting summary judgment to the Committee finding that O.C.G.A. § 21-2-193(a) serves a compelling interest in a narrowly tailored manner; and (2) whether the district court erred in denying Duke and the voters' motions for summary judgment.

---

[4]We find this contention meritless and do not address it.

DISCUSSION

Our review of a district court's grant of summary judgment is *de novo.* *Thompson v. Metropolitan Multi-List, Inc.,* 934 F.2d 1566, 1570 (11th Cir.1991), *cert. denied, Dekalb Bd. of Realtors, Inc. v. Thompson,* 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). According to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A genuine issue of material fact exists when a reasonable trier of fact considering the record evidence could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). In this appeal, we independently review the record before the district court and apply the same standards that the district court employed. *Lee v. Etowah County Bd. of Educ.,* 963 F.2d 1416, 1425 (11th Cir.1992). We review all evidence and all factual inferences from the evidence in the light most favorable to the nonmoving party. *Lee,* 963 F.2d at 1425.

I. State Action

In this lawsuit, Duke and the voters brought their cause of action under 42 U.S.C. § 1983, and therefore our initial inquiry concerns: (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United

States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912-13, 68 L.Ed.2d 420 (1981), *overruled on other grounds by, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 800 (11th Cir.1988), *aff'd by, Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Under the first prong of the test, this court has previously determined that the actions of the Committee taken pursuant to O.C.G.A. § 21-2-193 constitute state action. *See Duke v. Cleland,* 5 F.3d 1399, 1403-04 (11th Cir.1993). Therefore, our analysis focuses on determining whether genuine issues of material fact exist regarding the alleged deprivation of Duke and the voters' constitutional rights and the state's purported interests in advancing O.C.G.A. 21-2-193, and whether the Committee was entitled to judgment as a matter of law.

Although this court has determined that the actions of the Committee constitute state action, the district court found that the committee members' decision to exclude Duke from the presidential primary ballot was not necessarily state action because the committee members made the decision in their capacity as representatives of the Republican Party. *Duke v. Cleland,* 884 F.Supp. 511, 515 n. 2 (N.D.Ga.1995). While we perceive the distinction the district court attempts to make regarding the committee members' action taken under O.C.G.A. § 21-2-193, we disagree with the conclusion that a distinction exists. As this court noted in *Duke II,*

> the statute represents a scheme whereby the state confers largely upon itself the raw power to choose who may or may not be party primary candidates. Two-thirds of the committee's voting members are elected officials representing their

respective party. No guidelines limit their power. The committee may exclude nationally recognized candidates for any reason or no reason at all.

*Duke,* 5 F.3d at 1403. In light of the foregoing, we disagree with the district court's suggestion that the Committee's decision to exclude Duke was not state action, but we agree with the district court's conclusion that the committee members also acted as representatives of the Republican Party. We follow *Duke II* in holding that the Committee's decision to exclude Duke from Georgia's presidential primary ballot pursuant to O.C.G.A. § 21-2-193 constituted state action.

II. Deprivation of Rights

Since we have determined that the Committee's decision to exclude Duke from the primary ballot constituted state action, we now assess the purported interests that Duke and the voters alleged were infringed and the state's interests for enacting O.C.G.A. § 21-2-193. In our analysis, we are mindful of the Supreme Court's teachings that

> a court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interest put forward by the state as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's right."

*Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 2063, 119 L.Ed.2d 245 (1992) (quoting *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983)). Although the Supreme Court has indicated that a flexible approach may be necessary to determine the proper standard of judicial review to be applied in ballot access cases, we note that when a state election

law burdens a fundamental constitutional right severely, that law may survive only if it satisfies strict scrutiny; that is, it must be narrowly tailored to further a compelling state interest. *Eu v. San Francisco County Democratic Cent. Committee,* 489 U.S. 214, 222, 109 S.Ct. 1013, 1019-20, 103 L.Ed.2d 271 (1989); *Duke,* 5 F.3d at 1405. On the other hand, a state law that imposes only reasonable nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of persons in order to further the state's regulatory interests are generally sufficient to support the restrictions. *Burdick,* 504 U.S. at 434, 112 S.Ct. at 2063-64; *Duke,* 5 F.3d at 1405.

A. Duke's Interest

In this appeal, Duke asserts that the Committee's decision and the Georgia statute severely burdened his rights of free speech and association under the First and Fourteenth Amendments to the United States Constitution. Duke contends that because the statute grants the committee members "unfettered discretion" to grant or deny ballot access it is unconstitutional in that it allows the Committee members to exclude candidates based on the content of their speech. Duke argues that the statute also infringes his right to freedom of association.

We observed in *Duke I* that Duke does not have a right to associate with an "unwilling partner," the Republican Party. *Duke,* 954 F.2d at 1530. In *Duke I,* we found that the Committee did not infringe Duke's right of association because the Republican Party has a right to "identify the people who constitute the association and to limit the association to those people only." *Duke,* 954 F.2d

at 1531 (quoting *Democratic Party of United States v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981)).  Our decision in *Duke II* alters the analysis in this case, however, because in *Duke II,* we found that the Committee's decision to exclude Duke from the presidential primary ballot was not solely attributable to the Republican Party, but was partly attributable to the state of Georgia because the Committee derived its power to make the decision to exclude Duke under O.C.G.A. § 21-2-193 and not from the Republican Party.[5] *Duke,* 5 F.3d 1399, 1403-04.  The district court correctly pointed out, however, that notwithstanding the presence of state action, the committee members also served as representatives of the Republican Party.  *Duke v. Cleland,* 884 F.Supp. 511, 515 (N.D.Ga.1995).  Duke has an interest in being free from state discrimination based on the content of his speech. [6] *Chicago Police Department v. Mosley,* 408 U.S. 92, 96-98, 92 S.Ct. 2286, 2290-92, 33 L.Ed.2d 212 (1972).  Under our reasoning in *Duke v. Smith,* Duke also has a procedural due process right to have his petition to be placed on the ballot to be free from a committee's "unfettered discretion" in rendering a decision.  *Duke v. Smith,* 13 F.3d 388, 395 (11th Cir.1994).  Although Duke is correct in

---

[5]Therefore, we must focus not only on the interests of the Republican Party, but we must also consider the state's interests in establishing the Committee.

[6]The record shows that the members of the Committee wanted to exclude Duke from the presidential primary ballot based on his political beliefs and speech that were inconsistent with the Republican Party's principles.  For example, a press release quoted one of the committee members as stating that "Duke is a fraud and charlatan whose Nazi ties are an affront to our parents and grandparents who fought to protect our country and this world from domination by Hitler....  There is no room for disciples of Hitler on the Republican Presidential Ballot."

identifying his First and Fourteenth Amendment interests, those interests do not trump the Republican Party's right to identify its membership based on political beliefs nor the state's interests in protecting the Republican Party's right to define itself. *Duke,* 954 F.2d at 1531. Therefore, the Committee, acting as representatives of the Republican Party under O.C.G.A. § 21-2-193, did not heavily burden Duke's First Amendment and Fourteenth Amendment rights when it excluded him from the Republican Party's presidential primary ballot.

B. Voters' Interest

The voters, supporters of Duke, claim that O.C.G.A. § 21-2-193 burdens their associational rights and their right to vote for a candidate of their choice. The voters contend that under *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974), the right to vote is "heavily burdened" when the choices of candidates on primary ballots are restricted and other persons are "clamoring" to be listed on the election ballot. While *Lubin* does stand for the proposition that the voters urge, it also stands for the proposition that every voter cannot be assured that the voter's preferred candidate will be allowed on the ballot. *Lubin,* 415 U.S. at 716-17, 94 S.Ct. at 1320. The voters cite *Anderson v. Celebrezze,* 460 U.S. 780, 787-88, 103 S.Ct. 1564, 1569-70, 75 L.Ed.2d 547 (1983) for the proposition that the Committee's exclusion of Duke from the ballot burdened their First and Fourteenth Amendments right to associate for the advancement of their shared political beliefs and their right to endorse or oppose a particular candidate and the issues the candidate espouses. The

voters argue that under the statute, the Committee has unfettered discretion to decide who is fit and who is not fit to run as a republican. The Supreme Court has recognized that a free and open debate on the qualifications of candidates is "integral to the operation of the system of government established by our Constitution," and that burdens on candidate access to the ballot directly burden the voters' ability to voice preferences. *Buckley v. Valeo,* 424 U.S. 1, 14, 94, 96 S.Ct. 612, 632, 670-71, 46 L.Ed.2d 659 (1976). In this case, however, the voters have failed to offer any authority suggesting that they have a right to vote for their candidate of choice as a republican in a nonbinding primary.[7] In fact, this court has previously determined that any burden on these voters is "considerably attenuated" and possibly nonexistent. *Duke,* 954 F.2d at 1531.

C. The State's Interest

The district court determined that the state has an interest in regulating the time, place and manner of elections. *Duke v. Cleland,* 884 F.Supp. 511, 514 (N.D.Ga.1995). Moreover, the Committee claimed that the state has an interest in regulating ballot access. Indeed, the Supreme Court has recognized that the State's interest in keeping its ballots within manageable understandable limits is of the highest order. *Bullock v. Carter,* 405 U.S. 134, 144-45, 92 S.Ct. 849, 856-57, 31 L.Ed.2d 92 (1972). The Committee asserted that the state has an interest in protecting the rights of political parties to define their membership and that

---

[7]Nothing precludes these voters from supporting Duke as an independent candidate or a third-party candidate in the general election.

O.C.G.A. § 21-2-193(a) and (b) provide a mechanism for those interests to be furthered. The Committee claimed that the Republican Party has a clear and well fortified First Amendment right to define its membership under *Duke I. Duke v. Cleland,* 954 F.2d 1526, 1530 (11th Cir.1992) (finding that the Republican Party enjoys a constitutionally protected freedom that includes the right to identify the people who constitute its association). States do have an interest in regulating the time, place and manner of elections. *Burdick v. Takushi,* 504 U.S. 428, 433-434, 112 S.Ct. 2059, 2063-64, 119 L.Ed.2d 245 (1992). A responsibility emanating from that interest is the state's duty to determine how many names will appear on a primary ballot. *Anderson,* 460 U.S. at 786-90, 103 S.Ct. at 1568-71. Undoubtedly, in performing its obligation to regulate elections a state will impose some burdens upon voters and political parties. *Burdick,* 504 U.S. at 433, 434, 112 S.Ct. at 2063, 2063-64.

III. Strict Scrutiny

Although we do not believe that Duke and the voters' rights were heavily burdened as a result of the Committee's decision under O.C.G.A. § 21-2-193, we will apply strict scrutiny as the district court did in order to err on the side of caution. Undeniably, Duke has a First Amendment right to express his political beliefs free from state discrimination no matter how repugnant his beliefs may be to others. *Chicago Police Department v. Mosley,* 408 U.S. 92, 96-98, 92 S.Ct. 2286, 2290-92, 33 L.Ed.2d 212 (1972); *see generally Rutan v. Republican Party of Illinois,* 497 U.S. 62, 69, 110 S.Ct. 2729, 2734, 111 L.Ed.2d 52 (1990). It is equally clear,

however, that he does not have a First Amendment right to express his beliefs as a presidential candidate for the Republican Party. *Duke v. Cleland,* 954 F.2d 1526, 1531 (11th Cir.1992); *see also Democratic Party of U.S. v. Wisconsin,* 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d 82 (1981). The Republican Party has a First Amendment right to freedom of association and an attendant right to identify those who constitute the party based on political beliefs. *Duke,* 954 F.2d at 1533; *Wisconsin,* 450 U.S. at 122, 101 S.Ct. at 1019 (finding that a party's freedom of association presupposes the freedom to identify the people who constitute the association and limit the association to those people only). Therefore, the Committee acting in a representative capacity for the Republican Party did not have to accept Duke as a republican presidential candidate. Duke does not have the right to associate with an "unwilling partner." *Duke,* 954 F.2d at 1530; *see also Belluso v. Poythress,* 485 F.Supp. 904, 912 (N.D.Ga.1980). Likewise, Duke supporters do not have a First Amendment right to associate with him as a Republican Party presidential candidate. *Duke,* 954 F.2d at 1531. Duke's supporters were not foreclosed from supporting him as an independent candidate, or as a third-party candidate in the general election. Moreover, Duke's supporters could have supported him as a third-party candidate in the primary or as a write-in candidate in the primary or general election.

The state has a compelling interest in protecting political parties' right to define their membership. *Duke,* 954 F.2d at 1530. Moreover, states have a significant interest in structuring and regulating elections in order to facilitate order, honesty and

fairness.  *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).  Common sense dictates that states must regulate elections and that the regulations will necessarily impose some burden upon voters and parties.  *Burdick,* 504 U.S. at 433, 112 S.Ct. at 2063.  We believe that O.C.G.A. § 21-2-193 is narrowly tailored to further Georgia's compelling state interests.  Under the statute, three party leaders are appointed to serve on the Committee.[8]  Although the Committee's decision to exclude a candidate from the presidential primary ballot is unreviewable by the entire membership of the party, these committee members are leaders in the Republican Party and are ultimately held accountable for their decisions by the membership of the Republican Party. Under the terms of O.C.G.A. 21-2-193, a person cannot serve on the Committee unless the membership of the Republican Party has placed them in a key leadership position.  Surely, these persons are aware of the principles and platform of the Republican Party and can decide what presidential candidates are aligned with the party's views.  Therefore, as leaders the membership of the party elected, they have been entrusted with the authority to make decisions for the party, and O.C.G.A. § 21-2-193 recognizes that these party leaders are in the best position to decide who should appear on Georgia's Republican Party presidential primary ballot.

Duke and the voters point to this court's decision in *Duke v. Smith,* 13 F.3d 388 (11th Cir.1994) (Florida *Duke* ) for support in

---

[8]It is difficult to imagine composing a committee of party leaders who are in a better position to determine how a presidential candidate lines up with the views of the party than the State Chairperson of the party and the Majority and Minority leaders of both the state house and senate.

arguing the unconstitutionality of Georgia's election statute. Although the statute involved in the Florida *Duke* case closely resembles the statute involved in this case, the differences between both the state's interests and the statutes warrant a different outcome. In the Florida *Duke* case, we only found that the "reconsideration provision" of the Florida statute was unconstitutional because no compelling interest existed for having the provision of the statute and that the provision endowed the presidential primary selection committee with "unfettered discretion" in the reconsideration process of excluded candidates. *Duke,* 13 F.3d at 395. First, the district court correctly determined that the state of Georgia, unlike the state of Florida, offered a compelling state interest that the statute furthered: namely, protecting political parties' rights to define themselves. Second, under the Florida statutes' reconsideration process, the statute merely stated a certain date and time that the Committee had to reconvene in order to determine whether a candidate would be placed on the presidential primary ballot. The Florida statute does not mention how a candidate may be placed on a ballot. Under the Georgia statute, however, any single member of the Committee may unilaterally place an excluded candidate's name on the presidential primary ballot. O.C.G.A. § 21-2-193(b). Therefore, the Georgia statute provides each of the committee members the ability to act as a check against arbitrary and capricious decisions. Duke and the voters argue that the operation of the Georgia statute actually undermined its purported interest in protecting a political party's ability to define itself because it

allows the committee members to make decisions that the party membership may not review. This argument suggests that the full party should have the right to determine what names appear on the ballot for a presidential primary. As the district court aptly pointed out, a system that would require a full party vote to put candidates on the presidential primary ballot would likely duplicate the results of the primary itself and also of the Committee. *Duke,* 834 F.Supp. at 518 n. 6. We hold that O.C.G.A. § 21-2-103 is narrowly tailored as it provides the state an efficient and effective means of furthering its compelling interest of protecting a political party's right to exclude persons with "adverse political principles."

## CONCLUSION

Because we find that neither Duke nor his supporters' First or Fourteenth Amendment rights were heavily burdened and that O.C.G.A. § 21-2-193 is narrowly tailored to serve a compelling state interest, the district court did not err in granting summary judgment.

AFFIRMED.