**Johnny SWANSON III, Plaintiff,**

v.

**Redding PITT, et al., Defendants.**

**Civil Action No. 2:04cv534–T.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 4, 2004.

Johnny Swanson, III, Birmingham, AL, pro se.

Robert David Segall, Shannon Lynn Holliday, Copeland Franco Screws & Gill, John J. Park, Jr., Office of the Attorney General, Montgomery, AL, for Defendants.

OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Johnny Swanson III brought this lawsuit against various officials of the State of Alabama and of the Alabama Democratic Party, challenging the following: the party's refusal to let him run for United States Senate as a Democrat; the State's failure to stop the party from doing so; and the State's failure to restore his voting and civil rights. The named "party defendants" are Redding Pitt, the Chairman of the Alabama Democratic Party, and Joe L. Reed, Warren Davis, Amy Burks, Pat Edington, and Vickie Holloway, other officials of the Alabama Democratic Party; the named "state defendants" are Nancy Worley, the Secretary of State of

Alabama; Troy King, the Attorney General of Alabama; Sidney Williams, the Chair of the Alabama State Board of Pardons and Paroles; and Robert Riley, the Governor of Alabama; and the party defendants and the state defendants are referred to collectively as "the defendants."[1] Swanson's complaint alleges that the defendants' actions violated the First, Fourteenth, and Seventeenth Amendments and the ex post facto clause of the United States Constitution, as applied through 42 U.S.C.A. § 1983; the Voting Rights Act of 1965, 42 U.S.C.A. §§ 1973 through 1973p; and 1975 Ala.Code §§ 15–22–20, 15–22–23, 15–22–36.1, and 17–3–10.[2] Jurisdiction over Swanson's federal claims is proper under 28 U.S.C.A. §§ 1331 (general federal question) and 1343 (civil rights). Supplemental jurisdiction over the state-law claims is proper under 28 U.S.C.A. § 1367.

This case is now before the court on the party defendants' motion to dismiss and alternative motion for summary judgment; the state defendants' motion to dismiss; Swanson's motion for summary judgment; and Swanson's motion for leave to amend his complaint.[3] For the reasons that follow, the party defendants' alternative motion for summary judgment and the state defendants' motion to dismiss will be granted; the party defendants' motion to dismiss will be denied as moot; and Swanson's motions will be denied.

## I. STANDARDS OF REVIEW

The party defendants have filed a motion to dismiss and an alternative summary-judgment motion. Because both the party defendants and Swanson submitted evidentiary materials and because the court has considered those materials in relation to Swanson's claims against the party defendants, the court has considered only the alternative motion for summary judgment.[4] Fed.R.Civ.P. 12(b). The court previously gave the parties notice of its intention to consider the alternative summary-judgment motion.[5]

Swanson is proceeding pro se in this case. Courts should show "a leniency to pro se litigants not enjoyed by those with the benefit of a legal education," *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1369 (11th Cir.1998). However, this leniency "does not give a court license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Id.* (citations omitted).

### A. Summary–Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56 of the Federal Rules of Civil Procedure, the par-

1. It appears from Swanson's complaint that he is suing the state defendants in only their official capacities.

2. Swanson does not cite these statutes in his complaint, but includes their text as part of his evidentiary record. Book of exhibits, filed June 29, 2004 (Doc. no. 27), pp. 56–72.

3. The court construes Swanson's brief in support of his motion for summary judgment, filed June 29, 2004 (Doc. no. 26), as including a motion for leave to amend his complaint.

4. The evidentiary materials are not relevant to Swanson's claims against the state defendants, and the court has not considered them in relation to those claims; thus, it is not necessary to treat the state defendants' motion to dismiss as a motion for summary judgment.

5. Order entered June 15, 2004 (Doc. no. 21).

ty seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. Motion–to–Dismiss Standard

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) ("[W]e may not ... [dismiss] unless it appears beyond doubt

that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief.") (citation omitted). In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon,* 467 U.S. at 73, 104 S.Ct. at 2232; *Jackson v. Birmingham Bd. of Educ.,* 309 F.3d 1333, 1335 (11th Cir.2002). Furthermore, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985).

## II. BACKGROUND

Pursuant to the above standards, the court will look at the facts in a light most favorable to Swanson. *See Antenor v. D & S Farms,* 88 F.3d 925, 927 n. 2 (11th Cir.1996). In any case, the relevant facts in this case are not in dispute.

In August 2003, Swanson contacted the Alabama Democratic Party to inquire into what he needed to do in order to run for United States Senate as a Democrat in 2004. The party sent him qualifying papers to fill out, but did not send him the party's bylaws, which contain restrictions on who may run for office as a Democrat.

In March 2004, Swanson filed qualifying papers with the party and paid a qualifying fee of $ 3,140. On April 5, 2004, Ed White of Gadsden, Alabama wrote a letter to the party, challenging Swanson's candidacy as a Democrat on the grounds that Swanson ran for the United States Senate as an independent in 2002.[6]

---

6. Swanson ran as an independent write-in candidate for United States Senator from Alabama in 2002, and received about 1,350 votes. There was a Democratic candidate in the race as well. Before the 2002 election, Swanson attempted to get his name on the ballot as the candidate of the Independent Democrats of Alabama (a group that he had

formed) but did not succeed in doing so. Swanson, along with two other individuals, filed a suit in this court challenging the rules governing ballot access for independent candidates. *Swanson v. Bennett,* Civ. A. No. 02–644 (M.D. Ala., filed June 4, 2002). Motions for summary judgment are pending in that case.

On April 9, 2004, Redding Pitt, the Chairman of the Alabama Democratic Party, wrote to Swanson to inform him that his candidacy had been challenged on the basis that he "violated party bylaws by not supporting the nominees of the Democratic Party within the last four years." Pitt's letter set a hearing date of April 14. On April 12, Swanson sent a letter to the party in which he admitted that he had run for United States Senate as an independent candidate in 2002, and in which he "pledge[d] his allegiance to the Democratic Party, and formally switche[d] his Political Party membership to the Alabama Democratic Party, and the DNC as a whole."

On April 14, 2004, a five-member subcommittee, composed of members of the State Democratic Executive Committee and chaired by Joe L. Reed, held a hearing. Swanson appeared and defended himself. White, who filed the challenge against Swanson, did not appear at the hearing, but his attorney appeared and spoke on his behalf.

The subcommittee unanimously sustained White's challenge to Swanson's candidacy. They orally informed Swanson of their decision immediately after the April 14 hearing, and expanded on their reasoning in an opinion dated April 16, 2004. In the opinion, the subcommittee explained that Swanson had sought election to the United States Senate as an independent candidate in 2002 in an election in which there was a Democratic candidate, and Swanson had not been pardoned by the Executive Board for his opposition to the Democratic nominee. This, the subcommittee held, was in violation of the party's bylaws, Article VII, § 1(f), which states:

> "No person shall be permitted to qualify as a candidate for nomination or election to public or Party office as a Democrat in any elections who did not support the nominees of the Democratic Party in all Special or General Elections during the past four years."

> "Provided, however, any person ... who has supported the candidacy of someone other than a Democrat ... and who desires to switch parties and seek office under the Democratic Party, may do so by renouncing his or her previous party allegiance, and the reasons therefore, to that party and pledging loyalty and allegiance to the Democratic Party for admission. The Democratic Party Chairman shall refer the matter to the Executive Board.... If, after such a hearing, the Executive Board is convinced by a preponderance of the evidence that such a person would be an asset to the Democratic Party, the Executive Board may, by a vote of two-thirds of those present and voting, allow that person to seek office as a Democrat."

The subcommittee held that Swanson's April 12 letter was insufficient to comply with this rule, since Swanson had not tried to seek a pardon from the Executive Board "until 10 days after the qualifying deadline had closed."

On April 15, Swanson wrote to Pitt to appeal the subcommittee's ruling. Pitt affirmed the subcommittee's ruling on May 19, 2004, finding that "the decision of the subcommittee was in fact supported by substantial credible evidence." Pitt also rejected Swanson's claim that White's challenge to his candidacy was invalid because White had not posted a bond; Pitt noted that under party bylaws "[t]he requirement for posting a bond is optional at the discretion of the SDEC Chairman ... For all 2004 primary challenges, as opposed to contests, the Chairman has waived the requirement of posting security for costs." Swanson's qualifying fee of $ 3,140 was refunded to him on May 24, 2004.

After Swanson was eliminated from the Democratic ballot for United States Senate, there was only one other name left on it, that of Wayne Sowell. Like Swanson, Sowell is an African–American man. Because Sowell was unopposed, his name did not appear on the June 1 primary election ballot.

Apart from his claims relating to the Democratic Party's decision not to let him run as a Democrat, Swanson raises claims relating to the State of Alabama's failure to restore his civil rights and voting rights. The pleadings do not contain many details about the facts underlying these claims. It appears simply that Swanson was previously convicted of a crime in another State and has not had has civil rights restored despite his application for a pardon and the restoration of his voting rights.

## III. DISCUSSION

### A. Claims against Party Defendants

Swanson complains about several things related to the party defendants' decision not to let him run on the Democratic Party ballot. Construing his complaint liberally, the court finds that he alleges: (1) that the party's establishment of requirements for candidates violates the Constitution; [7] (2) that the party defendants wrongfully failed to tell him about the relevant bylaws before White filed his complaint; [8] (3) that the procedures the party followed in processing his complaint were inadequate for several reasons; [9] (4) that Swanson's April 12 letter pledging his allegiance to the Democratic Party was enough to comply with the party's bylaws and to render him eligible to run for office as a Democrat; [10] and (5) that the party "conspired" to engage in "Candidate Tampering," or keeping "the people's choices" off the ballots.[11]

The court will address each of Swanson's perceived claims in turn.

### 1. Party's Rules

The court reads Swanson's complaint as alleging that the party's establishment of requirements for would-be candidates, which requirements go beyond the rules set forth in the United States Constitution for Senators, violates the equal protection clause and the First Amendment.

This claim is due to be rejected. As for the equal-protection claim, even assuming a political party's rules could violate the equal protection clause, Swanson has not alleged that the party's rules were intended to, or had the effect of, treating him differently from other similarly situated persons. Thus, the party's rules do not violate the equal protection clause.

■ Turning to Swanson's First Amendment argument, it is true that Swanson has a First Amendment interest in being free from state discrimination based on the content of his speech. *Duke v. Massey*, 87 F.3d 1226, 1232 (11th Cir. 1996). It is not at all clear how the party's actions could constitute state action. Even ignoring this problem, though, as the party defendants argue, a political party also has a First Amendment right to freedom of association. This associational right necessarily includes the freedom to limit its membership and its candidates for public office according to political belief. *Id.* at 1234; *see also Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981) ("[T]his Court has recognized that the inclusion of

---

7. Complaint, filed June 14, 2004 (Doc. no. 1), pp. 13–14.

8. *Id.* at 3.

9. *Id.*

10. *Id.* at 13–14.

11. *Id.* at 3, 13.

persons unaffiliated with a political party may seriously distort its collective decisions—thus impairing the party's essential functions—and that political parties may accordingly protect themselves from intrusion by those with adverse political principles.") (citations omitted). This associational right is broad enough to include a party's decision to exclude people who have not been loyal to the party. *Alabama Republican Party v. McGinley,* —— So.2d ——, ——, 2004 WL 1099995, *9 (Ala.2004). A would-be candidate does not have a right to "associate with an unwilling partner" by forcing a political party to allow him to run for office as that party's candidate regardless of his political beliefs. *Id.; Duke v. Cleland,* 954 F.2d 1526, 1530–31 (11th Cir.1992). Relatedly, political parties have the discretion to govern themselves as they see fit. *Ripon Soc., Inc. v. Nat'l Republican Party,* 525 F.2d 567, 585 (C.A.D.C.1975) ("a party's choice, as among various ways of governing itself, of the one which seems best calculated to strengthen the party and advance its interests, deserves the protection of the Constitution as much if not more than its condemnation") (*cited in Democratic Party of U.S. v. Wisconsin,* 450 U.S. at 124 n. 26, 101 S.Ct. at 1020 n. 26).

Thus, the court concludes that Swanson's First Amendment interest in getting his name on the ballot as a Democrat is outweighed by the party's associational right to choose its own candidates for office based on their political beliefs and according to the party's bylaws.

### 2. Party's Failure to Inform Swanson about Bylaws

Swanson alleges that no-one from the party informed him of the relevant party bylaws when he inquired about how he should go about running for office as a Democrat; he also alleges that he told party officials that he had run for office as an independent in 2002.[12] Swanson claims the party defendants' conduct violated the Fourteenth Amendment's guarantees to equal protection and procedural due process, and the ex post facto clause of the Constitution.[13]

Swanson has not stated a claim for a violation of his procedural due-process rights. Even assuming that the bylaws of a political party can implicate due-process rights, the party defendants' alleged failure to inform Swanson of the bylaws did not violate his right to due process. While in some situations a lack of fair notice can deny a person the right to due process, no such violation occurred here because the bylaws in question were publicly available and did not change at all during the relevant period. *Compare Campbell v. Bennett,* 212 F.Supp.2d 1339, 1343–44 (M.D.Ala.2002) (holding that due process was likely violated when a law shortening the deadline for gathering nominating signatures went into effect so soon before the deadline that it denied would-be candidates fair notice of the deadline). Swanson, who has run for public office before and should be well aware that there can be procedural hurdles to getting one's name on a ballot, *see Swanson v. Bennett,* 219 F.Supp.2d 1225 (M.D.Ala.2002), could have

12. Plaintiff's brief in support of motion for summary judgment, filed June 29, 2004 (Doc. no. 26), p. 3.

13. In Swanson's brief in support of his motion for summary judgment, he also states that the party's failure to inform him about the bylaws constitutes a breach of fiduciary duty. This claim is addressed *infra* in Section III.C.

To the extent that Swanson is also alleging that this conduct violated the Seventeenth Amendment or the Voting Rights Act, such claims are also due to be rejected.

and should have researched the bylaws on his own.

■ For similar reasons, Swanson's ex post facto claim is also due to be rejected.[14] An ex post facto law is one that applies retroactively, particularly in a way that negatively affects a person's rights. *Black's Law Dictionary* 601 (7th ed.1999). Even assuming that the party's bylaws constitute "laws" in any sense, the Constitution's ex post facto clause applies only to criminal laws, *Kansas v. Hendricks*, 521 U.S. 346, 370, 117 S.Ct. 2072, 2086, 138 L.Ed.2d 501 (1997), and the party's bylaws certainly are not criminal laws. Further, even assuming that the bylaws could violate the ex post facto clause, the party's bylaws were not enacted after the fact and applied retroactively; Swanson simply did not find out about them in time to get his name on the ballot. The timeworn principle that "ignorance of the law is no defense" also means that ignorance of the law is not a violation of the ex post facto clause. *See United States v. Tapia*, 981 F.2d 1194, 1196 (11th Cir.1993).

■ Neither has Swanson stated a claim for an equal-protection violation. He has not alleged that the party defendants treated anyone else any differently from the way they treated him.

### 3. Party's Challenge Procedures

■ Swanson objects to the procedures that the party followed in handling White's challenge to his candidacy. He states that White's letter was "not a proper complaint as defined by party bylaws,"[15] that the party waived the requirement that White post a bond, that White did not appear at the subcommittee hearing, and that Chairman Pitt did not consider his appeal "on an expeditious basis as requested, denying this Court ample time to hear this matter and to order relief for the primary election."[16] The court construes Swanson's complaint as alleging that these procedures violated his right to procedural due process.[17]

The procedures that the party followed in handling White's complaints did not violate his right to due process. As the party defendants argue in their brief, even assuming that Swanson has a liberty or property interest in getting his name on the ballot as a Democrat such that he had a right to due process, and assuming that the party's actions could violate the Constitution, the party's procedures were adequate. The Constitution guarantees "the right to be heard at a meaningful time and in a meaningful manner" before an individual is deprived of a property interest or suffers other "grievous loss." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893,

14. The party defendants did not read Swanson's complaint to state a violation of the ex post facto clause, and so they did not respond specifically to the claim in their original motion to dismiss, filed June 14, 2004 (Doc. no. 17). However, after Swanson expanded on his ex post facto claim in his brief in support of his motion for summary judgment, filed June 29, 2004 (Doc no. 26), the party defendants did respond to the claim. Response to motion for summary judgment, etc., filed July 16, 2004 (Doc. no. 32).

Since the court, interpreting Swanson's complaint liberally, reads his complaint as asserting an ex post facto claim, *see* complaint, filed June 1, 2004 (Doc. no. 1), p. 8,

and since the party defendants moved to dismiss all the claims against them in their motion to dismiss, or, in the alternative, for summary judgment (Doc. no. 17), the court will address the ex post facto claim.

15. Complaint, filed June 1, 2004 (Doc. no. 1), p. 3.

16. *Id.*

17. If Swanson is alleging an equal-protection violation with respect to the application of these procedures to him, this claim is due to be rejected because he has not shown that any similarly situated person was treated differently.

902, 47 L.Ed.2d 18 (1976). The party afforded Swanson such an opportunity: it notified Swanson of the challenge and the basis for the challenge, and of the time when the hearing would be held; Swanson attended the hearing and was allowed to defend himself and to present evidence on his own behalf. *See Alabama Republican Party v. McGinley,* —— So.2d ——, 2004 WL 1099995 (Ala.2004) (stating that would-be candidate's procedural due-process rights were not violated by procedures Republican Party used to decide challenge to her candidacy, where party gave plaintiff notice that her candidacy had been challenged and informed her of the time of the hearing and that she had the right to be present, to participate in the hearing, and to present evidence). Finally, Swanson has not shown that any of these procedures prejudiced him in any way.

As for Swanson's appeal from the subcommittee's decision, the appeal was resolved fairly quickly; Chairman Pitt issued an opinion on May 19, 34 days after Swanson appealed. Swanson cannot show that this delay prejudiced him; he did not file this lawsuit until 13 days after Pitt decided his appeal, and this court denied Swanson's motion for a temporary restraining order.

#### 4. Swanson's April 12 Letter of Allegiance

■ Swanson states that the April 12 letter he sent to the party, in which he pledged his allegiance to the party, was enough to comply with the party's bylaws, and thus that the party should have allowed him to run as a Democrat. The court construes this as a procedural and substantive due-process claim.

This claim is due to be rejected because, even assuming that the party's actions could violate the Fourteenth Amendment, the party's actions in no way denied due process to Swanson. As stated, the right to procedural due process includes the right to be heard at a reasonable time and in a reasonable manner. Swanson was given a chance to be heard on his argument that his April 12 letter complied with the bylaws; both the subcommittee and Chairman Pitt considered this argument, as demonstrated by their written opinions which clearly stated their reasoning.

■ Conduct by a government actor constitutes a substantive due-process violation "only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office,* 329 F.3d 1300, 1305 (11th Cir.2003). Even assuming that party officials could in some way constitute government actors, Swanson's substantive due-process claim fails because the party's actions were not unreasonable, let alone arbitrary or conscience-shocking. Both the subcommittee and Pitt concluded that the bylaws required Swanson to request, and receive, permission from the Executive Board *before* seeking a candidacy, not after his candidacy had been challenged. This is certainly a reasonable interpretation of the bylaws. *See* State Democratic Executive committee of Alabama Bylaws, Article VII, § 1(f) ("any person ... who desires to switch parties and seek office under the Democratic Party, may do so by renouncing his or her previous party allegiance ... and pledging loyalty and allegiance to the Democratic Party for *admission* ... [T]he Executive Board may, by a vote of two-thirds of those present and voting, allow that person to seek office as a Democrat.") (emphasis added).

Even if the party's interpretation of its own bylaws were more questionable, the court would be wary of second-guessing the party's conclusion that Swanson had not satisfactorily shown his allegiance to the party. As discussed above, a political party's First Amendment right of association includes the right to choose its candi-

dates for public office according to their political beliefs. *Duke v. Massey*, 87 F.3d 1226, 1234 (11th Cir.1996). The party was exercising its associational rights when it decided, consistent with its bylaws, that Swanson had not shown loyalty or allegiance to the party and thus that the party did not want Swanson to be its candidate.

#### 5. "Candidate Tampering" Charge against Party Defendants

■ Swanson's charge that the party conspired with state officials to engage in "Candidate Tampering," or keeping "the people's choices" off the ballot, is due to be rejected. It is not clear what law Swanson alleges this conduct violated. In any case, the party did not prevent Swanson from getting his name on the ballot, but just from getting his name on the ballot as the Democratic Party's candidate. Swanson has not alleged facts which would show that the party decided not to allow him to run as a Democrat for any impermissible reason, such as because of his race. As discussed above, the party acted within its associational rights when it decided not to allow Swanson to run as a Democratic candidate.

### B. Claims against State Defendants

Swanson asserts the following against the state defendants: (1) that the state defendants have conspired to engage in "candidate tampering"; specifically, the Alabama Secretary of State and the Alabama Board of Pardons and Paroles have "sought to work in collusion with special interest [sic] or upon certain directives to insure that certain candidates did not gain constitutional Ballot access"; [18] (2) that the State "must be mandated to correct it's [sic] procedures to be required to register

Candidates and to allow the names to appear under any party or organization of the candidate filing qualification papers and paying any required qualification fee"; [19] (3) that the ballot access laws applicable to independent candidates are unconstitutional; [20] (4) that the state defendants have "failed to properly supervised the elections;" [21] and (5) that the Board of Pardons and Paroles failed to reinstate Swanson's voting rights. [22] The court will address each of these contentions in turn.

#### 1. "Candidate Tampering" Charge against State Defendants

■ Swanson's charge that the state defendants conspired with the Democratic Party to engage in "Candidate Tampering," or keeping "the people's choices" off the ballot, is due to be rejected. It is not clear what law Swanson alleges this alleged conduct violated. In any case, Swanson's complaint does not state any facts which would show that the state defendants were involved in any way in the decision not to allow Swanson to run for office as a Democrat. Indeed, Swanson's complaint makes clear that this decision was made by the party. Further, because the party did not violate Swanson's rights by preventing him from running for office as a Democrat, even if the state defendants were involved in the decision, their involvement would not constitute a "conspiracy" to break any laws.

#### 2. Charge that State Should Place Persons Who File Qualification Papers on the Ballot

■ Swanson's second claim seeks to force the State to include candidates on the ballot "under any party or organization of the candidate filing qualification papers

**18.** Complaint, filed June 14, 2004 (Doc. no. 1), p. 4.

**19.** *Id.* at 12.

**20.** *Id.* at 11.

**21.** *Id.* at 13.

**22.** *Id.* at 4, 11–12.

and paying any required qualifying fee." [23] The court interprets this to mean that the State should be required to override the decision of a political party and to place an individual, like Swanson, on the ballot as the candidate of that party if that individual filled out qualifying papers and paid a qualifying fee, even if the party had decided that it did not want that individual to be its candidate.

This claim is due to be rejected. As was explained, a political party has an associational right to chose its candidates for office based on their political beliefs, and thus this court cannot override a party's legitimate decision about who its candidates should be. This also means that this court cannot accomplish the same end by telling the State to override a party's decision about who its candidates will be.

### 3. Ballot Access Laws for Independent Candidates

■ Swanson's complaint states "[t]here is now substantial basis for this Court to utilize it's [sic] Equity Powers to grant some relief in this matter on a ex-peditious basis, and to declare the rules related to Ballot Access for even Independent Candidates/Parties as Unconstitutional." [24] Swanson alleges that by the time the Democratic Party had made its decision not to allow him to run as a Democrat, it was too late for him to gather the signatures necessary to get his name on the ballot as an independent candidate.

Swanson's complaint gives no hint as to what provision of the Constitution this could have violated. Swanson has not stated a claim for a violation of any of the provisions of the Constitution he mentions in his complaint (the First, Fourteenth, and Seventeenth Amendments and the ex post facto clause). The mere fact that Swanson was not able to get his name on the ballot as an independent candidate does not mean that the rules for doing so are unconstitutional.

Swanson also alleges that Alabama's laws are inconsistent with those of other States, but this is also not a violation of the equal protection clause.

Thus, this claim is due to be rejected for failure to state a claim. [25]

### 4. State Defendants' Failure to Supervise Elections

■ Swanson claims that the state defendants failed to "properly supervise the elections," [26] in violation of the First, Fourteenth, and Seventeenth Amendments to the Constitution. [27] The court construes this claim to mean that if the state defen-

---

23. *Id.* at 12.

24. Complaint, filed June 1, 2004 (Doc. no. 1), p. 11.

25. To the extent that Swanson is attempting to incorporate by reference the claims based on the qualifications clause of the Constitution that he raised in another case before this court, *Swanson v. Bennett*, Civ. A. No. 02–644 (M.D. Ala., filed June 4, 2002), in which summary judgment motions are pending, the court rejects that attempt. A litigant cannot obtain a faster ruling in one case simply by filing another case.

26. Complaint, filed June 1, 2004 (Doc. no. 1), p. 13.

27. One sentence in Swanson's complaint states that the state defendants' failure to supervise the elections was "in violation to Amendments I, X, IV, and XVII—United States Constitution." Complaint, filed June 1, 2004 (Doc. no. 1), at 14. Because the rest of Swanson's filings do not mention the Tenth or Fourth Amendments, the court assumes that Swanson simply inserted an errant comma and that he meant "Amendments I, XIV, and XVII." However, to the extent that Swanson is alleging a violation of the Fourth or Tenth Amendment, such claims are due to be dismissed for failure to state a claim.

dants had done a better job supervising the election, they could have prevented the party defendants' illegal acts of which Swanson complains.

However, as is explained exhaustively above, Swanson has not shown any illegal acts on the part of either the party or the state defendants. Thus, the State's failure to prevent any of these acts does not violate any laws. To the extent that Swanson is claiming a due-process violation stemming from the state defendants' failure to be adequately involved in the elections, the claim must also be rejected because Swanson has not shown any prejudice arising from the state defendants' alleged failure.

### 5. Swanson's Voting Rights

Swanson states that he applied to the Alabama State Board of Pardons and Paroles "to receive a Pardon and/or re-instatement of his voting rights" in August 2003, and that his voting rights have not yet been restored. He claims that this violates various provisions of state law.[28] He also states that the State takes longer to process the applications of people who committed crimes out of state than it does to process the applications of those who violated Alabama law, and claims that this violates the Voting Rights Act and the equal protection clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C.A. § 1983.

#### a. State–Law Voting Rights Claims

■■■ Swanson's claims based on the state defendants' alleged failure to comply with state law are due to be rejected. In order to grant relief on these claims, this court would have to order state officials to comply with state law. This a federal court court cannot do. *Pennhurst State*

*School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984).

#### b. Voting Rights Act

■■■ Swanson's claim that the state defendants' failure to restore his voting rights violates the Voting Rights Act is due to be rejected. The Voting Rights Act prohibits the use of any "voting qualification or prerequisite to voting or standard, practice, or procedure ... which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." 42 U.S.C.A. § 1973. Swanson does not allege that the state defendants' failure to restore his voting rights has anything to do with race, or that Alabama's laws on restoring the right to vote to people convicted of crimes have a particular impact on voters of a certain race. Thus, he has not stated a claim for a violation of the Voting Rights Act.

#### c. Equal Protection Voting Rights Claims

■■■ Swanson's claim of a violation of the equal protection clause, as enforced through 42 U.S.C.A. § 1983, is based on his allegation that "in-state violators of the law are processed and provided relief, and out of State violators are not processed in the same expeditious manner, nor is a letter provided to out of state applicant [sic] to grant them temporary relief while the administrative difficulties are handled." [29] This claim appears to be asserted against only defendant Sidney Williams, the Chair of the Alabama State Board of Pardons and Paroles. The state defendants admit that cases involving out-of-state convictions "are presently taking a disproportionate amount of time." [30]

---

**28.** Complaint, filed June 1, 2004 (Doc. no. 1), p. 11.

**29.** *Id.* at 12.

**30.** Memorandum in support of motion to dismiss claims against state defendants, filed June 14, 2004 (Doc. no. 19), p. 6.

The equal protection clause of the Fourteenth Amendment requires that similarly situated people be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). While most equal-protection cases allege discrimination on the basis of suspect classifications such as race, sex, or national origin, the equal protection clause more generally "protects citizens from arbitrary or irrational state action." *Batra v. Board of Regents of the Univ. of Nebraska*, 79 F.3d 717, 721 (8th Cir.1996). Even when a legislative enactment does not discriminate on its face, if it is applied in a discriminatory manner it can violate the guarantee of equal protection.

Here, Swanson does not allege that the State's laws or regulations are facially discriminatory. It is unclear whether his claim is that Williams is applying the law in a discriminatory manner, *see, e.g., Strickland v. Alderman,* 74 F.3d 260, 264 (11th Cir.1996) ("It is well settled that unequal application of a facially neutral statute may violate the Equal Protection Clause."), or whether he is claiming that the seemingly neutral law was passed for discriminatory reasons and has a disparate impact on a certain group such that its enforcement is unconstitutional, *see, e.g., Hunter v. Underwood,* 471 U.S. 222, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985) (holding that facially neutral Alabama law adopted in order to discriminate against blacks and which continued to have a disparate impact against blacks violated the equal protection clause).

However, government officials do not violate the equal protection clause every time they treat two people differently.

*Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944). Neither does the fact that a facially neutral law affects "certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law," constitute an equal-protection violation. *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 271–72, 99 S.Ct. 2282, 2292, 60 L.Ed.2d 870 (1979). "When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern." *Id.* Rather, in order to establish an equal protection clause violation, a plaintiff must show that the challenged state action was motivated by an intent to discriminate. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *Elston v. Talladega County Bd. of Educ.,* 997 F.2d 1394, 1406 (11th Cir.1993).

Swanson's complaint does not allege that the law allowing felons to regain their voting rights, or Williams's actions in enforcing that law, were motivated by an intent to discriminate. Neither are there any facts or allegations in the complaint from which the court could infer the existence of such an intent. Indeed, the complaint states that the reason for the delay in processing Swanson's application is due to a computer problem. Thus, Swanson has failed to state a claim for a violation of the equal protection clause. *GJR Investments, Inc. v. County of Escambia,* 132 F.3d 1359, 1368 (11th Cir.1998) (stating that a plaintiff failed to state a claim for an equal protection clause violation because, among other reasons, he used "broad pejorative words to describe the defendants' intentions without giving any specifics" as to their discriminatory intent).[31]

---

31. While it appears that Swanson has sued the state defendants in their official capacities only, he would fail if he had sued them in their individual capacities as well. The Eleventh Circuit employs a heightened pleading standard for plaintiffs alleging § 1983 claims against state officials in their individual capacities, *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1251 (11th Cir.2003) ("As Defendants point out, the Eleventh Circuit requires

## C. Swanson's Motion for Leave to Amend

In Swanson's brief in support of his motion for summary judgment, he states three new claims that he did not state in his complaint: (1) that the party defendants' actions in failing to inform him of the existence of the party bylaws constituted a breach of fiduciary duty; (2) that the party defendants' action in removing him from the Democratic ballot constituted a breach of contract;[32] and (3) that the party defendants failed to confirm whether

Ed White, the person who challenged Swanson's candidacy, was a Democrat. Because Swanson is proceeding pro se, the court interprets his pleadings liberally. Thus, the court interprets the brief in support of the motion for summary judgment as a motion for leave to amend the complaint to add the new claims.

Under Fed.R.Civ.P. 15(a), leave to amend a complaint shall be freely given when justice so requires. However, the Eleventh Circuit has found it within a district court's discretion to deny a motion to

§ 1983 plaintiffs to fulfill a higher standard of specificity in their complaints"); *GJR Investments*, 132 F.3d at 1367 ("[T]his circuit, along with others, has tightened the application of Rule 8 with respect to § 1983 cases in an effort to weed out nonmeritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim."). Swanson has not met this standard; he has not alleged with sufficient "specificity the facts which make out [his] claim," *id.*, such as what in particular Williams did to violate his rights.

However, the court must note that many other circuit courts have noted that a heightened pleading standard for § 1983 cases is in tension with the Federal Rules of Civil Procedure, which provide for a liberal pleading standard except in cases of fraud or mistake, Fed.R.Civ.P. 8 and 9(b), and also with the Supreme Court cases *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), which held that courts could not require heightened pleading for § 1983 claims against municipalities, and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), which held that a Title VII complaint need not contain facts showing the elements of a *McDonnell Douglas* prima facie case in order to survive a motion to dismiss. *See Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 62 (1st Cir.2004) ("Because neither the Civil Rules nor any applicable statute authorizes the imposition of a heightened pleading standard for civil rights actions, we disclaim our earlier practice and overrule the decisions authorizing it."); *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir.2004) ("Although once enforced in several circuits, including

ours, a fact-pleading requirement for civil rights complaints has been rejected by the Supreme Court in no uncertain terms"); *Smith v. City of Salem*, 369 F.3d 912, 924 (6th Cir.2004) ("Claims made pursuant to 42 U.S.C. § 1983 are not subject to heightened pleading standards."); *Thomson v. Washington*, 362 F.3d 969, 971 (7th Cir.2004) ("Federal judges are forbidden to supplement the federal rules by requiring 'heightened' pleading of claims not listed in Rule 9."); *Miranda v. Clark County, Nevada*, 319 F.3d 465, 470 (9th Cir.2003) (en banc) ("We have now held that no heightened pleading standard applies unless required by the Federal Rules of Civil Procedure."); *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1211 (10th Cir.2003) ("A requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation.") (*quoting Swierkiewicz v. Sorema N.A.*); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir.2002) (holding that prior circuit cases which created heightened pleading standards for § 1983 actions were overruled by *Swierkiewicz*).

**32.** Swanson's complaint does mention "contract violations." Complaint, filed June 1, 2004 (Doc. no. 1), p. 8. However, the complaint does not explain, and the court could not discern, what allegedly constituted a contract violation. Thus, the court has not addressed any allegations of contract violations in resolving the defendants' motions.

However, in Swanson's brief in support of his motion for summary judgment, filed June 29, 2004 (Doc. no. 25), he explains his contract claim more fully. Thus, the court treats this as a new claim.

amend due to futility. *United Food and Commercial Workers Unions v. Philip Morris, Inc.*, 223 F.3d 1271, 1275 (11th Cir.2000) (finding no error in the district court's decision to deny leave to amend the complaint as futile for failure to state a claim).

The court will deny Swanson's motion for leave to amend his complaint because the amendment would be futile. None of Swanson's three new claims would state a claim upon which relief could be granted.

▮ Swanson's assertion that the party defendants breached a fiduciary duty by failing to tell him about the party's bylaws could not succeed. A fiduciary relationship exists when one person has a duty to act for the benefit of the other within the scope of the relationship. Some examples of fiduciary relationships are attorney/client, trustee/beneficiary, and guardian/ward. *Black's Law Dictionary* 601 (7th ed.1999). Swanson's telephone conversations with Democratic Party officials about what he would need to do in order to run for office as a Democrat could not, by any stretch of the imagination, establish a fiduciary relationship between Swanson and the party defendants. Thus, because the party defendants did not have a fiduciary duty to Swanson, they could not have breached such duty.

▮ Swanson's claim that the party breached a contract with him would also be futile because there was no contract between Swanson and the party. Swanson asserts that his telephone conversations with the party and his payment of a qualifying fee established a contract, and that the party breached that contract by refusing to let him run for office as a Democrat. However, the party defendants clearly did not enter into a contract with Swanson when they answered his questions and sent him qualifying papers to fill out. Thus, this claim is also futile.

▮ Finally, Swanson's claim that the party wrongfully failed to confirm whether White is a Democrat does not state a claim upon which relief can be granted. Swanson does not point to any law that this action violated, nor can the court conceive of one that it might violate. Also, Swanson did not make this argument to the party during the subcommittee hearing or the appeal on White's challenge to his candidacy. Thus, he cannot now bring a claim about the party's failure to reject White's challenge based on this argument. This claim would be futile.

An appropriate judgment will be entered.

## JUDGMENT

In accordance with the opinion entered on this date, it is the ORDER, JUDGMENT, and DECREE of the court as follows:

(1) The party defendants' alternative motion for summary judgment, filed on June 14, 2004 (Doc. no. 17), is granted.

(2) Judgment is entered in favor of defendants Redding Pitt, Joe L. Reed, Warren Davis, Amy Burks, Pat Edington, and Vickie Holloway, and against plaintiff Johnny Swanson III, with plaintiff Swanson taking nothing by his complaint as to these defendants.

(3) The party defendants' motion to dismiss, filed on June 14, 2004 (Doc. no. 17), is denied as moot.

(4) The state defendants' motion to dismiss, filed June 14, 2004 (Doc. no. 18), is granted.

(5) Plaintiff Swanson's claims against defendants Nancy Worley, Troy King, Sidney Williams, and Robert Riley are dismissed.

(6) The motion for summary judgment, filed by plaintiff Swanson on June 29, 2004 (Doc. no. 25), is denied.

(7) Plaintiff Swanson's brief in support of his motion for summary judgment, filed June 29, 2004 (Doc. no. 26), is treated as a motion for leave to amend the complaint and the motion is denied as futile.